UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JULIE GRIESINGER,                                                            Case No. 1:13-cv-808
        Plaintiff,                                                         Litkovitz, M.J.

vs.

UNIVERSITY OF CINCINNATI,                          **ORDER**
        Defendant.

This matter is before the Court on plaintiff's motion to strike portions of defendant University of Cincinnati's ("U.C.") memorandum in support of summary judgment (Doc. 79), defendant's response in opposition (Doc. 82), and plaintiff's reply memorandum (Doc. 83).

**I. Background**

*Plaintiff's Complaint (Doc. 1)*

Plaintiff filed her complaint in November 2013, alleging that defendant's failure to accommodate her disability violated the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.*, and the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181 *et seq.* (Doc. 1 at ¶¶ 1-2). Plaintiff alleges that as an infant, she was treated with resective surgery and chemotherapy for a neuro-ectodermal brain tumor. (*Id.* at ¶ 6). As a result, she "has difficulty with short-term memory and multitasking. Her intellectual abilities are characterized by low average verbal reasoning skills and extremely low-range non-verbal skills." (*Id.* at ¶ 7). Plaintiff enrolled at U.C. in 2008 and transferred to the medical assisting program in October 2009. (*Id.* at ¶ 9). Plaintiff alleges that upon enrollment, she registered with U.C.'s disability services office and was granted "certain accommodations." (*Id.* at ¶ 10). Plaintiff alleges that with those accommodations, she successfully completed the traditional coursework for the program with a 3.308 GPA. (*Id.* at ¶ 11). As a final degree requirement, plaintiff was required to pass a skills test and complete an externship in a medical setting. (*Id.* at ¶ 12). Plaintiff alleges that she

passed the skills test and was placed in an externship. (*Id.* at ¶ 15). Plaintiff was dismissed from the first externship placement, passed the skills test a second time, and was placed in a second externship. (*Id.* at ¶¶ 17-18). Plaintiff was dismissed from the second externship site and dismissed from the program. (*Id.* at ¶ 20). Plaintiff alleges that defendant did not inform her supervisors at either externship site that she was disabled or that she was to be provided accommodations. (*Id.* at ¶¶ 16, 19). Plaintiff alleges that after her dismissal from the program, she "petitioned U.C. for another externship site where she would be provided accommodations. U.C. refused this petition unless Plaintiff took and passed a third skills test." (*Id.* at ¶ 21).

In her claim for relief under the Rehabilitation Act, plaintiff alleges that "[b]y requiring a third skills test before placing Plaintiff at a new externship site, U.C. excluded her from participation in, denied her the benefits of, and/or subjected her to discrimination . . . solely because of her handicap." (*Id.* at ¶ 24). In her claim for relief under the ADA, plaintiff alleges that U.C. discriminated against her on the basis of her disability related to its failure to provide accommodations in her externship placement. (*See id.* at ¶¶ 25-27).

*Defendant's Motion for Summary Judgment (Doc. 77)*

After discovery, defendant filed its motion for summary judgment in January 2016. (Doc. 77). In relevant part, defendant stated in its statement of facts that after plaintiff's dismissal from the program on July 26, 2012, "UC made consistent efforts from July 2012 to September 2013 to accommodate [plaintiff] and provide her the opportunity to complete a Medical Assisting degree." (*Id.* at 18).[1] For example, defendant indicated that "[o]n August 24, 2012, UC offered two ways for [plaintiff] to complete a degree: either take three more courses to complete a Medical Billing and Coding degree, or be placed at a third practicum to complete the [Medical Assisting] degree." In order to be placed in a third practicum, plaintiff would first have

---

[1] Page citations for this document refer to the page numbers provided by CM/ECF.

to either successfully repeat five courses or achieve a score of 85% or higher on a test of 18 competencies.  (*See id.*; *see also* letter dated Aug. 24, 2012 from U.C. assistant general counsel Doug Nienaber to plaintiff's counsel, Doc. 79-1, Exh. A).  After plaintiff rejected that offer, defendant "offered [plaintiff] a chance for a third practicum placement for the spring 2013 semester—without requiring a skills assessment.  UC offered to search for and contact potential practicum sites that would be amenable to accommodating [plaintiff]."  (Doc. 77 at 18-19; *see also* letter dated Oct. 11, 2012 from Nienaber to plaintiff's counsel, Doc. 79-1, Exh. B).  Defendant agreed to recite a script provided by counsel to potential externship placements, informing them that plaintiff was the survivor of a pediatric brain tumor and that her placement site "must be willing to be patient, to provide repetition, and to accommodate her with a job coach for some portion of the clinical rotation."  (Doc. 77 at 19; Oct. 11, 2012 letter, Doc. 79-1, Exh. B).  Defendant also "offered to share reasonable costs of a job coach with the site and later agreed to assist in identifying coaches."  (Doc. 77 at 19).  Defendant indicated that it was unable to locate a placement for plaintiff for the spring 2013 semester because plaintiff "had still not provided the basic ADA-required information UC needed to place her."  (*Id.*).

Defendant indicated that after it received a neuropsychological report about plaintiff's disability on January 30, 2013, it offered plaintiff the opportunity to complete the externship for the spring 2013 semester if she identified a site for approval and coordination and completed a skills assessment before March 29, 2013.  (*Id.* at 20-21; *see also* letter dated Feb. 15, 2013 from Nienaber to plaintiff's counsel, Doc. 59-1, Exh. E).  To accommodate plaintiff for the skills assessment, defendant offered the following:  (1) "the test will be administered and scored by a faculty member who has no previous work with [plaintiff]"; (2) plaintiff "will be informed of the skills tested in advance and provided ample practice opportunities in the weeks leading up to the

3

test"; (3) plaintiff's "job coach can participate in practice"; and (4) plaintiff "can have an observer at the test." (Doc. 77 at 21; Feb. 15, 2013 letter, Doc. 59-1, Exh. E).

Defendant indicated that on April 17, 2013, it "followed up with another letter to reiterate its outstanding February offer and to address [plaintiff's] objections to various portions of the proposed skills assessment." (Doc. 77 at 21). In this communication, defendant indicated that it "will entertain proposals to accommodate [plaintiff's] disability in regard to the test; provided that she articulates the way in which her disability inhibits her in the context of each objectionable test element, so that the university can evaluate the reasonableness of her suggested accommodations." (*Id.*; email dated Apr. 17, 2013 from Nienaber to plaintiff's counsel, Doc. 79-1, Exh. C).

Defendant indicated that by May 2013, it had not received any placement information from plaintiff. (Doc. 7 at 21). Defendant stated it "informed [plaintiff] that the next practicum rotation was scheduled to begin in January for the Spring 2014 semester." (*Id.*). Defendant indicated that plaintiff "would need to complete the skills test in the late fall of 2013 with an 85% pass rate," but would be permitted "to observe the administration of the test to one group of students the day prior to her test, and UC provided her a chart showing the skills that would be tested." (*Id.*; *see also* letter from Nienaber to plaintiff's counsel dated May 31, 2013, Doc. 59-1, Exh. G).

Further, defendant stated that between December 2012 and June 2013, vocational rehabilitation professionals who collaborate with defendant "were exploring ways for [plaintiff] to complete her UC externship." (Doc. 77 at 22). Defendant indicated that these professionals "had nothing critical to say about UC's efforts, but frequently questioned whether [plaintiff's] family was pursuing an unrealistic goal." (*Id.* at 22-23).

4

In September 2013, defendant made "a final offer to have [plaintiff] do a third practicum, if she could pass the skills assessment." (*Id.* at 23). The terms of this offer included: (1) advance notice of the skills that would be tested; (2) individual instruction and feedback from an experienced instructor; (3) opportunity for independent review and practice of skills three days before the test; (4) opportunity to watch other students' skills tests and hear the feedback provided to them; and (5) permission to bring an observer to the skills test. (*Id.*; *see also* defendant's undated offer to plaintiff, Doc. 59-1, Exh. H). Defendant indicated that plaintiff rejected this offer and filed suit. (Doc. 77 at 24).

## II. Plaintiff's Motion to Strike (Doc. 79)

Plaintiff has moved the Court to strike the portions of defendant's statement of facts summarized above. (Doc. 79 at 1). Plaintiff argues that those facts are inadmissible at summary judgment under Federal Rule of Evidence 408 because they "describe conduct or statements made during compromise negotiations between the parties." (*Id.* at 3). Plaintiff contends that even if litigation had not yet been mentioned in this case at the time the offers were made, Rule 408 is applicable because "both sides were expressly preparing for litigation at the time their lawyers were negotiating." (*Id.* at 5). Plaintiff contends that depositions of U.C. administrators and the communications between the parties "make it clear that the parties were engaged in compromise negotiations." (*Id.* at 5-7). Further, plaintiff argues that the multiple references to "offers" in defendant's motion for summary judgment "leaves no doubt as to what the parties were doing in these post-dismissal discussions." (*Id.* at 7-8). Plaintiff asserts that she "makes no claim against UC for any of its conduct following her dismissal," and that instead, "her claims involve only UC's failure to accommodate her disability during her first two externships." (*Id.* at 9). Plaintiff contends that defendant is attempting to use the evidence of post-dismissal compromise negotiations for the improper purpose of proving "the invalidity of [plaintiff's]

5

claims based upon UC's pre-dismissal conduct." (*Id.*). Plaintiff further contends that references to the compromise negotiations in "three of UC's four arguments against [plaintiff's] claims" must be excluded. (*Id.* at 11).

Defendant responds that plaintiff waived the right to challenge the evidence she now seeks to exclude because the allegations in paragraph 21 of plaintiff's complaint "involve the very issues" that she seeks to strike from the motion for summary judgment. (Doc. 82 at 3). Defendant contends that further evidence of waiver can be found in plaintiff's discovery responses, in which she disclosed U.C. employees who only had significant involvement with her after her dismissal from the program. (*Id.* at 5). Additionally, in responding to defendant's requests for admissions, plaintiff admitted statements "which addressed UC's actions to offer reasonable accommodations to [her] . . . after she had been dismissed from the MA program." (*Id.* at 6). Defendant next argues that the post-dismissal communications are relevant and admissible for "another purpose," *i.e.*, to show that defendant complied with federal anti-discrimination laws by engaging in an interactive process with plaintiff to try to reach a reasonable accommodation. (*Id.* at 7). Defendant argues that the evidence is also admissible to negate plaintiff's argument that defendant intentionally discriminated against her on the basis of disability. (*Id.*). Defendant contends that the communications between counsel were aimed at reaching an accommodation for plaintiff's disability, not settling a claim. (*See id.* at 9-10). Defendant next argues that plaintiff's motion to strike lacks specificity as to what evidence she seeks to strike. (*See id.* at 12-15). Finally, defendant argues that application of Rule 408 would frustrate ADA policy concerns. (*Id.* at 16). Defendant contends that parties in ADA actions would have no incentive to engage in the interactive process before suit was filed if doing so would result in application of Rule 408 such that "the parties would be hamstrung to find

evidence of whether the defendant did or did not engage in a good faith interactive process in compliance with the ADA." (*Id.*).

In reply, plaintiff argues that under the advisory committee notes to Rule 408, the protection of the rule cannot be waived unilaterally. (Doc. 83 at 2). Plaintiff contends that defendant has offered no authority to support its contention that plaintiff may not abandon the claim in paragraph 21 of her complaint during the course of litigation. (*See id.* at 2-3). Plaintiff argues that her initial disclosures and responses to requests for admission should not operate as "some sort of 'pre-waiver'" of an evidentiary rule that "is self-activating and does not permit waiver." (*Id.* at 4). Plaintiff next argues that the post-dismissal conduct and communications at issue do not qualify for the "another purpose" exception contained in Rule 408 because defendant's purposes of using the evidence to "negate[] [plaintiff's] argument that UC intentionally discriminated against her" and to show that defendant was "reasonable throughout the interactive process and Plaintiff was not" lead to the conclusion that defendant offers the evidence "precisely" to disprove the validity of plaintiff's claims. (*Id.* at 5-6). As to defendant's argument concerning lack of specificity, plaintiff asserts that "it is hard to see how [her] five precise descriptions of the material in question can be judged insufficiently specific." (*Id.* at 8). Finally, plaintiff argues that a strict application of Rule 408 would encourage negotiated compromises. (*Id.* at 9-10).

Rule 408 prohibits a party from offering or from admitting evidence of "conduct or statements made in compromise negotiations regarding the claim." *Eid v. Saint-Gobain Abrasives, Inc.*, 377 F. App'x 438, 443-44 (6th Cir. 2010) (citing Fed. R. Evid. 408(a)). Specifically, a party's statement cannot be used "to prove liability for, invalidity of, or the amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction." *Id.* at 443 n.5 (citing Fed. R. Evid. 408(a)). Rule 408

7

promotes the "resolution of disputes short of litigation, thereby conserving scarce judicial resources," by recognizing that "settlements are more likely to result when parties are free to speak openly during settlement negotiations, without fear that what is said can be used against them at trial." *Id.* (citing *Korn, Womack, Stern & Assocs. v. Fireman's Fund Ins. Co.*, 27 F.3d 566, 1994 WL 264263, at *6 (6th Cir. June 15, 1994) (table decision)). The Rule also seeks to exclude irrelevant evidence, recognizing that "disputes are often settled for reasons having nothing to do with the merits of a claim." *Id.* The party invoking Rule 408 to bar the admission of evidence bears the burden to provide its applicability to the evidence at issue. *Foreword Magazine, Inc. v. Overdrive, Inc.*, No. 1:10-cv-1144, 2011 WL 5169384, at *6 (W.D. Mich. Oct. 31, 2011). "The fact that litigation had not been threatened . . . or that the parties did not use the word 'settlement' in their communications is not material." *CTI Clinical Trial Servs., Inc. v. Gilead Scis., Inc.*, No. 1:10-cv-491, 2013 WL 1641348, at *19 (S.D. Ohio Apr. 16, 2013) (Report and Recommendation) (Litkovitz, M.J.), *adopted*, 2013 WL 2252973 (S.D. Ohio May 22, 2013) (Weber, J.).

  Few courts have considered whether the protection of Rule 408 may be waived, and those that have considered the issue did not rely on a waiver theory as justification for denying Rule 408 protection. *See GIC Servs., LLC v. Freightplus (USA), Inc.*, No. 13-cv-6781, 2015 WL 5682605, at *2 n.2 (E.D. La. Sept. 25, 2015) (noting that "the Court is unaware of binding precedent regarding waiver of Rule 408," but finding that "a party challenging admissibility under Rule 408 must raise the objection before or at trial"); *Alpex Comput. Corp. v. Nintendo Co., Ltd.*, 770 F. Supp. 161, 165-67 (S.D.N.Y. 1991) (rejecting defendant's argument that plaintiff "deliberately waived the protection generally afforded under [Rule 408] by disclosing the fact and the terms of its settlements outside the context of th[e] litigation"). The Advisory

Committee on the Federal Rules of Evidence has offered the following commentary concerning whether a party may waive the protection of Rule 408:

> Rule 408 excludes compromise evidence even when a party seeks to admit its own settlement offer or statements made in settlement negotiations. If a party were to reveal its own statement or offer, this could itself reveal the fact that the adversary entered into settlement negotiations. The protection of Rule 408 cannot be waived unilaterally because the Rule, by definition, protects both parties from having the fact of negotiation disclosed to the jury. Moreover, proof of statements and offers made in settlement would often have to be made through the testimony of attorneys, leading to the risks and costs of disqualification.

Advisory Comm. Note (2006 Amendment) to Fed. R. Evid. 408.

A court may admit evidence of compromise offers and negotiations "for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408(b). Some courts have admitted evidence of compromise offers and negotiations for the purpose of showing that the parties engaged in the interactive process for reaching a reasonable accommodation that the ADA requires. *See Cook v. Morgan Stanley Smith Barney*, No. H-13-1321, 2014 WL 4064000, at *6 (S.D. Tex. Aug. 15, 2014) (admitting evidence notwithstanding Rule 408 because it was "being used not to show liability but to show that [defendant] was engaging in the interactive process"); *Linebarger v. Honda of Am. Mfg., Inc.*, 870 F. Supp.2d 513, 521 n.2 (S.D. Ohio 2012) ("The Court is not persuaded by Plaintiff's argument that interactions between counsel regarding accommodations are not admissible evidence in view of Federal Rule of Evidence 408, which generally prohibits the introduction of evidence regarding offers of compromise or settlement, as these communications were made in an effort to reach a consensus on a reasonable accommodation."); *Williams v. British Airways, PLC*, Nos. 04-cv-0471 and 06-cv-5085, 2007 WL 2907426, at *8 n.13 (E.D.N.Y. Sept. 27, 2007) (finding that notwithstanding Rule 408, "settlement discussions may be considered in the ADA context for the purpose of assessing a

9

party's participation in the interactive process"). However, other courts have still excluded evidence under Rule 408 even though it was being offered in part to show engagement in the interactive process. *See Jackson v. O'Reilly Auto. Stores, Inc.*, __ F. Supp.3d __, No. 3:12-cv-1215, 2015 WL 5511402, at *6-*7 (M.D. Tenn. Sept. 17, 2015) (excluding letter containing settlement offer because "Rule 408 precludes introduction of the . . . letter or related testimony for the purposes intended by Plaintiff," including to show "both that Defendant failed to properly engage in the interactive process and that it could have reasonably accommodated [plaintiff]"); *Scavetta v. King Soopers, Inc.*, No. 10-cv-2986, 2013 WL 2393070, at *3 (D. Colo. May 31, 2013) (recognizing that a settlement agreement showing evidence of defendant's efforts to accommodate plaintiff was "not inadmissible under Rule 408," but nevertheless prohibiting admission of the settlement agreement for that purpose because (1) its "limited probative value for [that] purpose[] is substantially outweighed by the danger of undue prejudice and confusion of the issues"; and (2) admission of the agreement was "likely to mislead the jury into focusing upon the offer to compromise rather than on the elements of Plaintiff's claims").

Here, defendant's waiver argument is not well-taken. The Advisory Committee has indicated that a party may not unilaterally waive the protection of Rule 408. *See* Advisory Comm. Note (2006 Amendment) to Fed. R. Evid. 408. Moreover, courts that have considered a waiver theory in relation to Rule 408 have declined to rely on that theory to deny Rule 408 protection. *See GIC Servs., LLC*, 2015 WL 5682605, at *2 n.2; *Alpex Comput. Corp.*, 770 F. Supp. at 165-67.

Defendant argues that the offers contained in these communications are being presented to show that defendant engaged in the interactive process for the purpose of reaching a reasonable accommodation. The Court agrees with the majority of courts that have considered the issue and finds that the communications at issue may be admissible for this purpose. *See*

10

*Cook*, 2014 WL 4064000, at *6; *Linebarger*, 870 F. Supp.2d at 521 n.2; *Williams*, 2007 WL 2907426, at *8 n.13.  However, the Court will not consider these post-dismisal offers in assessing whether defendant engaged in the interactive process with regard to plaintiff's first and second externship placements.  Evidence of defendant's offers concerning a possible third externship placement after plaintiff's dismissal from the program is not relevant to the issue of whether defendant previously engaged in the interactive process as to the first two externship placements.  *See* Fed. R. Evid. 401.  *See also Scavetta*, 2013 WL 2393070, at *3.  On the other hand, plaintiff's complaint alleges that she petitioned for a third externship site "where she would be provided accommodations" but defendant "refused this petition unless [she] took and passed a third skills test." (Doc. 1 at ¶ 21).  Thus, the evidence at issue would be admissible for the purpose of showing that defendant engaged in the interactive process as to the proposed third externship.  However, plaintiff now indicates that she has abandoned any claim related to defendant's alleged failure to accommodate her in a third externship placement.  (*See* Doc. 79 at 9; Doc. 83 at 2-3).  Therefore, the purpose for which the Court finds that the evidence in question would be admissible—i.e., to show that defendant engaged in the interactive process *after* plaintiff's dismissal from the program in relation to any claim regarding defendant's post-dismissal conduct—is no longer at issue.

To the extent defendant offers this evidence to show that defendant did not intentionally discriminate against plaintiff on the basis of her disability, this goes directly to the issue of the "validity" of plaintiff's claims.  *See* Fed. R. Evid. 408(a).  To establish a prima facie case of intentional discrimination under the Rehabilitation Act and Title II[2] of the ADA, a plaintiff must prove: "(1) she has a disability; (2) she is otherwise qualified; and (3) she was being excluded

---

[2] The Court notes defendant's argument that plaintiff has raised an ADA claim under Title III and not Title II.  (*See* Doc. 77 at 24-26.).  However, the Court need not decide this issue at present and assumes for the sake of argument that plaintiff has raised a claim under Title II.  In any event, even if plaintiff has not properly raised a claim under Title II, the same elements still apply to plaintiff's claim under the Rehabilitation Act.

from participation in, denied the benefits of, or subjected to discrimination under the program because of her disability." *Anderson v. City of Blue Ash*, 798 F.3d 338, 356 (6th Cir. 2015) (citation omitted). These elements for proving a claim of intentional discrimination are the same elements that plaintiff has pled in her complaint. (Doc. 1 at ¶¶ 22-24). Thus, defendant's argument that the evidence could show that it did not intentionally discriminate against plaintiff does not serve "another purpose," but goes directly toward proving the validity, or lack thereof, of plaintiff's claims. *See Anderson*, 798 F.3d at 356. Therefore, the evidence at issue is not admissible for purposes of Rule 408 to show defendant's lack of intent to discriminate against plaintiff.

Based on the foregoing, the motion to strike (Doc. 79) is **GRANTED** on the condition that plaintiff has abandoned any claim related to defendant's conduct after her dismissal from the program. The portions of the statement of facts in defendant's motion for summary judgment related to the negotiations between the parties after plaintiff's dismissal from the medical assisting program (Doc. 77 at 18-24) are **STRICKEN**. Pursuant to the Court's prior order (Doc. 81), plaintiff's response to the motion for summary judgment is due **15 days** from the date of this order.

**IT IS SO ORDERED.**

Date: 3/25/16                               s/Karen L. Litkovitz
                                            Karen L. Litkovitz
                                            United States Magistrate Judge

12