UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JULIE GRIESINGER,            Case No. 1:13-cv-808
    Plaintiff,                       Litkovitz, M.J.

vs.

UNIVERSITY OF CINCINNATI,        ORDER
    Defendant.

Plaintiff Julie Griesinger brings this disability discrimination action against defendant University of Cincinnati under the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq.*, and the American with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181 *et seq.* This matter is before the Court on defendant's motion for summary judgment (Doc. 77), plaintiff's memorandum in opposition (Doc. 85), and defendant's reply memorandum (Doc. 86).

I. Facts

*Plaintiff's Learning Disability*

Plaintiff was a student in the Medical Assisting program at defendant's Blue Ash College. (Doc. 1 at ¶ 5; Doc. 34 at ¶ 5). As an infant, plaintiff had a brain tumor that was treated with chemotherapy and surgery. (*See* Confidential Neuropsychological Report of Christian von Thomsen, Psy.D., Exh. PPP to Deposition of Sid Binks, Ph.D., Doc. 76-1 at 29). As a result, plaintiff has a learning disability, which includes significant memory impairment and an inability to process information at a normal rate. (*See id.* at 31-32; Independent Neuropsychological Consultation of Dr. Binks, Exh. WWW to Binks Deposition, Doc. 76-1 at 18-19; Independent Medical Evaluation of Thomas Sullivan, Ph.D., Exh. XXX to Binks Deposition ("Sullivan Evaluation"), Doc. 76-1 at 49-50). For example, after a 20-minute delay, plaintiff's ability to remember information that was verbally related to her is worse than 998 out of 1,000 people of her age. (Sullivan Evaluation, Doc. 76-1 at 50).

In high school, plaintiff utilized an individualized education plan ("IEP"). (*See* Loveland City Schools IEP, Plaintiff's Exh. 4 to Binks Deposition, Doc. 76-1 at 21-28). Under the terms of her IEP, plaintiff received the following accommodations: extended time to take quizzes or tests, access to a resource room with individualized assistance from an instructor, tests read aloud, the use of notes on tests, the option for a note taker in class, and a separate, quiet room for taking tests and quizzes. (*Id.* at 23; Deposition of Julie Griesinger, Doc. 61 at 11-14). With these accommodations, plaintiff graduated high school in 2008. (Doc. 61 at 11).

*Plaintiff's Enrollment in Defendant's Blue Ash College*

Plaintiff enrolled at Blue Ash College in the fall of 2008 and transferred to the medical assisting program in the fall of 2009. (Doc. 1 at ¶ 9; Doc. 34 at ¶ 9). She provided defendant's disability services office ("DSO") with a copy of her high school transcript and IEP. (Doc. 61 at 27-28). The IEP noted the following information concerning plaintiff's disability: "[Plaintiff] is a survivor of a brain tumor and received chemotherapy for ten months when she was a young child. During her preschool years, [plaintiff] received special services at the Cerebral Palsy Services Center." (IEP, Doc. 76-1 at 21). The IEP also noted that "[w]ork completion within a specific amount of time is tough for [plaintiff]." (*Id.*). Plaintiff's mother testified that in the fall of 2008, she accompanied plaintiff to the DSO and informed a DSO employee that plaintiff would need extended time. (Deposition of Karen Griesinger, Doc. 62 at 26, 30-32). Plaintiff interviewed with DSO director John Kraimer and was granted accommodations based on that interview and the IEP she had provided. (Doc. 61 at 27-28; Doc. 1 at ¶ 10; Doc. 34 at ¶ 10).

At the start of each quarter, plaintiff submitted an accommodation request form that listed the accommodations she needed. (*See* Accommodation Request Forms, Exh. F attached to plaintiff's deposition, Doc. 61-2 at 16-39). Throughout her enrollment, plaintiff requested accommodations for extended time for testing, a quiet testing environment, a note taker, and use

2

of a tape recorder. (*See id.*). Defendant never denied plaintiff any of these requested accommodations. (*See* Doc. 61 at 37-38). With these accommodations, plaintiff completed the classroom coursework, receiving mostly As and Bs during her third and fourth years in the program. (*See* Doc. 61 at 40-41).

*The Externship Requirement*

To graduate from the medical assisting program, students were required to complete a clinical component, which is referred to in the record as an "externship" or "practicum." (Deposition of Mary Elizabeth Browder, Doc. 66 at 34-35). Successful completion of the externship required 320 hours in a medical setting, split equally between administrative and clinical work. (*Id.* at 42, 88). In spring 2012, Mary Browder was the externship coordinator who was charged with assigning medical assisting students to externships and monitoring their progress. (*Id.* at 47-48). Browder received reports from students and on-site supervisors. (*Id.* at 63-65). Although defendant's Externship Guidelines provided that "[i]n selecting an externship site, [defendant] take[s] into account the pace and general atmosphere of the site and [the student's] personality and talents," Browder explained that because placement facilities were limited, she focused primarily on whether a site's geographic location was accessible for the student. (*Id.* at 46-47, 58-59; Externship Guidelines, Exh. M to Browder Deposition, Doc. 66-2 at 55). Kraimer testified that the obligation to provide reasonable accommodations under the ADA extended to a student's externship requirement. (Doc. 67 at 21-22).

In October 2011, plaintiff requested to begin the externship in the spring 2012 term to complete her medical assisting degree. (Email from plaintiff to Rachael Allstatter dated October 13, 2011, Exh. G to plaintiff's deposition, Doc. 61-2 at 40). On March 27, 2012, plaintiff completed an accommodation request form for the spring 2012 term in which she requested a note taker for in-class lectures, extended time for testing, and the use of a tape recorder.

(Accommodation Request Form dated March 27, 2012, Exh. F to plaintiff's deposition, Doc. 61-2 at 38). On April 2, 2012, plaintiff started an externship at Cincinnati Pain Management Consultants. (*See* emails from plaintiff to Browder dated March 22 and March 27, 2012, Exhs. K and L to plaintiff's deposition, Doc. 61-2 at 44-45). Plaintiff testified that beyond her accommodation request form, she did not tell defendant that she would need any other accommodation related to her externship at Cincinnati Pain Management Consultants. (*See* Doc. 61 at 51-52). Specifically, plaintiff testified:

> Well, I assumed since this is basically another class, an externship, that they would—that my teachers would tell them for me because in the manual it says that they're going to take into consideration the pace and the flow of each student. And I thought—since my teachers were aware of my disability before each class, I thought they were going to tell them—tell the sites about my disability too since it's another class.

(*Id.*).

On May 3, 2012, Julie Haley of Cincinnati Pain Management Consultants informed Browder that plaintiff's externship needed to be terminated. (E-mail from Julie Haley to Browder dated May 3, 2012 at 8:29 a.m., plaintiff's Exh. 2 attached to Browder deposition, Doc. 66-2 at 26). Haley indicated that plaintiff's externship was being terminated for the following reasons: (1) plaintiff copied previous entries from a patient's history instead of writing a new entry concerning the patient's current symptoms; (2) plaintiff "seems to be a slower learner"; (3) plaintiff was unable to properly attach a blood pressure cuff; (4) plaintiff would not finish assigned tasks; and (5) plaintiff appeared to have problems with her vision and hearing. (*See id.*; e-mail from Haley to Browder dated May 2, 2012 at 8:24 a.m., plaintiff's Exh. 2 attached to Browder deposition, Doc. 66-2 at 27). Plaintiff denied the truth of these complaints concerning her performance. (Doc. 61 at 65-67).

4

After plaintiff was terminated from her externship, Browder had a number of meetings with plaintiff and her parents before placing plaintiff at a second externship site. (*See* Doc. 66 at 106-09). Plaintiff's mother testified that at one of these meetings:

> [M]y husband and I asked [Browder] for the second site that [plaintiff] went to, to make sure that she was with somebody patient, that would take the time to train [plaintiff] because of her disability. And I believe [Browder's] answer was, "No, we expect you to be off the ground running,["] and, "You'll do good," and, "Believe in yourself," something like that at that time. Very nonchalant about it. Didn't really want to discuss it.

(Doc. 62 at 49). Further, plaintiff's mother testified that at this meeting, she also told Browder that plaintiff needed repetition and extended time to learn at her second externship site. (*Id.* at 51-52). Plaintiff's father testified that at this meeting:

> [We] reminded [Browder] about the accommodations, things that [plaintiff] would need, which we felt that she didn't get on the first externship, which resulted in her dismissal from that externship, things that she would need to make the second one successful. . . . We talked about the time, needing extra time, as she would be able to repeat these and that she would be able to do one skill, one task, repeat it often enough until she mastered that and then move on to the next so that she wasn't overloaded with a multitude of varying responsibilities all at once to give her time to master a skill, move on to the next. We asked for someone to be patient with her, that understood what [her] disability was, how she would learn and how she could be successful.

(Deposition of John Griesinger, Doc. 64 at 23-24). Further, plaintiff's father testified that he asked Browder to communicate their requests to someone at the externship site. (*Id.* at 24). Browder denied that plaintiff's parents requested accommodations for plaintiff at this meeting. (*See* Doc. 66 at 114-16).

Browder arranged a second externship opportunity for plaintiff at Family Medical Care Associates. (*Id.* at 116). Browder testified that she told the externship site that plaintiff "may need some extra time to learn," but did not inform the site that plaintiff received accommodations through DSO. (*Id.* at 118). Plaintiff began this externship on June 18, 2012. (Doc. 61 at 93; UC Blue Ash College time sheets, Exh. U to plaintiff's deposition, Doc. 61-2 at

70). Family Medical Care Associates terminated plaintiff from the externship on June 28, 2012. (*See* e-mail from plaintiff to Browder dated June 29, 2012 at 5:43 p.m., Exh. W to plaintiff's deposition, Doc. 61-2 at 74). Davida Claxon, office manager at the second externship site, explained that plaintiff's externship was terminated for the following reasons: (1) plaintiff was unable to complete "simple [clerical] tasks without assistance"; (2) plaintiff "consistently was unable to take blood pressure, pulse, respiration, temperature (digital speaking thermometer)"; and plaintiff's "inability to take accurate vitals, perform EKGs, and communicate with patients could endanger the outcomes of patient health." (Letter from Davida Claxon dated July 9, 2012, Exh. X to plaintiff's deposition, Doc. 61-2 at 76-77).

On July 26, 2012, Browder notified plaintiff by letter that she was being dismissed from the medical assisting program based on her failing grades for the externship requirement. (Letter from Browder to plaintiff dated July 26, 2012, Exh. Y to plaintiff's deposition, Doc. 61-2 at 85). The letter also quoted Claxon's statement that plaintiff's "inability to perform tasks . . . could 'endanger the outcomes of patient health.'" (*Id.*).

## II. Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Under Federal Rule of Civil Procedure 56(c), a grant of summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002). The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving

party. *Satterfield*, 295 F.3d at 615; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a *prima facie* case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

**III. Resolution**

Defendant moves for summary judgment on plaintiff's claims under the Rehabilitation Act and the ADA. Defendant argues that plaintiff's claim under the ADA must fail because she pled a violation of Title III of the ADA, which applies to public accommodations and services operated by private entities, instead of a violation of Title II, which applies to public entities such as defendant. (Doc. 77 at 24-26).[1] Defendant further argues that courts give "tremendous deference to the professional judgment of faculty" when considering accommodation requests in academic settings. (*Id.* at 27). Defendant contends no reasonable jury could find that defendant failed to reasonably accommodate plaintiff's disability under federal disability law because plaintiff neither provided a proper diagnosis of her disability nor specifically requested an accommodation for her externship. (*Id.* at 27-30). Defendant argues that no reasonable jury

---

[1] Page citations for this document refer to the page number provided by CM/ECF.

7

could find that plaintiff is entitled to compensatory or punitive damages because punitive damages are not available in private suits brought under the Rehabilitation Act and Title II of the ADA and there is no evidence in the record that defendant intentionally discriminated against plaintiff, which is required to recover compensatory damages. (*Id.* at 39-40).[2]

Plaintiff responds that defendant failed to engage in the interactive process to accommodate her disability before her first externship. (Doc. 85 at 8-10). Plaintiff contends defendant persisted in this failure to engage in the interactive accommodation process even after she and her parents requested externship accommodations before her second externship placement. (*Id.* at 10-11). Plaintiff argues judicial deference to defendant's academic decisions is not appropriate in this case because defendant "clearly failed to make an accommodation decision" and presented no evidence that it considered possible accommodations, their feasibility, and their cost and effect on the program. (*Id.* at 12-14). Plaintiff contends that whether she was an otherwise qualified person with a disability is a jury question given the competing expert opinions about plaintiff's likelihood of successfully completing an externship with accommodations. (*Id.* at 14-16). Plaintiff argues a reasonable jury could find that defendant's personnel intended their own actions such that compensatory damages would be appropriate. (*Id.* at 16-17). Plaintiff contends the proper forum to determine whether punitive damages are appropriate is in a pretrial motion. (*Id.* at 18).

In reply, defendant argues that plaintiff's failure to properly plead her claim under Title II of the ADA is significant because of the different causation standards in the ADA and the Rehabilitation Act. (Doc. 86 at 2-3). Defendant contends that "[i]t is undisputed that neither

---

[2] The Court does not consider defendant's other arguments, which are related to the parties' attempts to negotiate a third externship placement after plaintiff's dismissal from the program. The Court previously struck the portions of defendant's brief related to the potential third externship given plaintiff's representation that she had abandoned any claim related to defendant's alleged failure to accommodate her in a third externship placement. (*See* Doc. 84 at 11).

8

[plaintiff] nor her family provided [defendant] with a current diagnosis during any of her time at [Blue Ash College]." (*Id.* at 4). Defendant argues that it complied with disability law by not stigmatizing plaintiff and assuming she would need accommodations in an externship. (*Id.* at 4-7). Defendant contends it had no duty to engage in the interactive process because plaintiff failed to provide a proper diagnosis or specific request for accommodations in her externships. (*Id.* at 7). Defendant argues that the requests plaintiff's parents made to Browder were not sufficiently specific and should have been directed to DSO staff, not faculty members. (*Id.* at 8). Defendant contends that even if these requests were sufficient, defendant complied with them by placing plaintiff at Family Medical Care Associates for her second externship. (*Id.* at 9). Defendant argues that if plaintiff desired externship accommodations, she should have noted them on the accommodation request form she completed on March 27, 2012. (*Id.* at 10-12). Defendant contends that because the Court struck from the record facts related to a potential third externship, plaintiff cannot rely on those facts to bolster her claims. (*Id.* at 13). Defendant argues that no reasonable jury could award compensatory damages because plaintiff has provided no plausible evidence that defendant intended to discriminate against her. (*Id.* at 13-14).

    A.  <u>NOTICE PLEADING</u>

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Pleadings must be construed as to do justice." Fed. R. Civ. P. 8(e). Courts must construe pleadings "liberally in order to prevent errors in draftsmanship from barring justice to litigants." *Carter v. Ford Motor Co.*, 561 F.3d 562, 566 (6th Cir. 2009) (quoting *Ritchie v. United Mine Workers of Am.*, 410 F.2d

Case: 1:13-cv-00808-KLL Doc #: 89 Filed: 05/03/16 Page: 10 of 16 PAGEID #: 1269

827, 833 (6th Cir. 1969)). Courts look at the "course of the proceedings" to determine whether a defendant has received notice of a plaintiff's claim. *Id.* at 566, 568-69. The Sixth Circuit has stated that "the fundamental tenor of the Rules is one of liberality rather than technicality, and it creates an important context within which we decide cases under the modern Federal Rules of Civil Procedure." *Minger v. Green*, 239 F.3d 793, 799 (6th Cir. 2001) (quoting *Miller v. Am. Heavy Lift Shipping*, 231 F.3d 242, 248 (6th Cir. 2000)). "[T]he argument that the ultimate legal issue in this case could be properly adjudicated upon what was plainly nothing more tha[n] an oversight in pleading is frivolous." *Foote v. Barnhart*, No. 3:06-cv-686, 2008 WL 2756256, at *10 (M.D. Tenn. Jul. 15, 2008) (citing Fed. R. Civ. P. 61 ("At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.")).

"The court should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). Further, a court "may permit the pleadings to be amended" during and after trial and "should freely permit an amendment when doing so will aid in presenting the merits." Fed. R. Civ. P. 15(b)(1).

Here, defendant's argument that plaintiff waived a claim under Title II of the ADA is not well-taken. Plaintiff's complaint gave defendant "fair notice" of her claim and "the grounds upon which it rests." *See Twombly*, 550 U.S. at 555. While plaintiff mistakenly cited to Title III of the ADA instead of Title II as relating to defendant, the Court must construe her complaint "liberally in order to prevent errors in draftsmanship from barring justice to litigants." *Carter*, 561 F.3d at 566. The Court notes that elsewhere in her complaint, plaintiff alleged that defendant is "a public university receiving federal financial assistance," which was sufficient to give defendant fair notice that Title II of the ADA was applicable to plaintiff's claim. (*See* Doc. 1 at ¶ 5).

More importantly, the Court looks to the course of the proceedings to determine whether defendant was on notice that plaintiff was raising a claim under Title II. *Carter*, 561 F.3d at 566, 568-69. In its motion for summary judgment, defendant fully briefed the issue of a failure to accommodate claim brought under Title II. (*See* Doc. 77 at 26-30). Thus, the Court "notes that a liberal construction of the complaint does not adversely impact the Defendant, since [it] ha[s] addressed the merits of the [Title II claim] in [its] dispositive motion." *Blankenship v. Lewis Cty. Fiscal Court*, No. 06-cv-147, 2007 WL 4404165, at *5 (E.D. Ky. Dec. 17, 2007).

Finally, the Court notes that it may permit the pleadings to be amended during and after trial to conform to the evidence presented in the case. *See* Fed. R. Civ. P. 15(b)(1). This provides yet further justification for not dismissing plaintiff's ADA claim on a technical oversight in pleading. *See Minger*, 239 F.3d at 799; *Foote*, 2008 WL 2756256, at *10. The parties have fully briefed plaintiff's claims under the Rehabilitation Act and Title II of the ADA. Plaintiff is granted leave to amend her complaint to include the correct title and citation of the ADA and ordered to file an amended complaint within ten (10) days of the filing of this Order. The Court will now consider plaintiff's claims on the merits.

B. DISABILITY DISCRIMINATION

Claims brought under the Rehabilitation Act are generally reviewed under the same standards that govern ADA claims. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir. 2010). To establish that she was dismissed from an academic program in violation of the ADA or Rehabilitation Act, plaintiff must show that (1) she is handicapped or disabled; (2) she is "otherwise qualified" to continue in the program; and (3) she was dismissed on the basis of her handicap or disability. *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 435 (6th Cir. 1998). "A handicapped or disabled person is 'otherwise qualified' to participate in a program if

she can meet its necessary requirements with reasonable accommodation." *Id.* (citing *Sandison v. Mich. High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1034 (6th Cir. 1995)).

"A publicly funded university is not required to provide accommodation to a student under the ADA or Rehabilitation Act until the student provides a proper diagnosis of [her] claimed disability and specifically requests an accommodation." *Carten v. Kent State Univ.*, 78 F. App'x 499, 500-01 (6th Cir. 2003) (citing *Kaltenberger*, 162 F.3d at 437). *See also Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 795 (1st Cir. 1992) ("A relevant aspect of [the reasonableness] inquiry is whether the student ever put the medical school on notice of [her] handicap by making a sufficiently direct and specific request for special accommodations." (internal quotation marks omitted)). While a university "need not be required to make 'fundamental' or 'substantial' modifications to accommodate the handicapped, it may be required to make 'reasonable' ones." *Kaltenberger*, 162 F.3d at 436 (quoting *Alexander v. Choate*, 469 U.S. 287, 300 (1985)).

Here, defendant apparently does not dispute that plaintiff is handicapped or disabled. In any event, a reasonable jury could find that plaintiff has a disability based on the Loveland IEP, the evaluations of Dr. von Thomsen, Dr. Binks, and Dr. Sullivan, and defendant's history of granting her accommodations in pre-externship coursework. (*See* Doc. 76-1 at 18-19, 21-29, 31-32, 49-50; Doc. 61 at 27-28, 37-38; Doc. 1 at ¶ 10; Doc. 34 at ¶ 10).

Second, a reasonable jury could also find that plaintiff is "otherwise qualified" to continue in the medical assisting program with accommodations. *See Kaltenberger*, 162 F.3d at 435. For example, when defendant granted plaintiff accommodations for coursework, she received mostly As and Bs during her third and fourth years in the program. (*See* Doc. 61 at 40-41). Further, Dr. Binks and Dr. von Thomsen opined that plaintiff could successfully complete

12

the externship requirement if she received reasonable accommodations for her disability. (*See* Doc. 76-1 at 20, 33).

Third, a jury could reasonably conclude that defendant dismissed plaintiff from the medical assisting program on the basis of her disability. *See Kaltenberger*, 162 F.3d at 435. Defendant dismissed plaintiff from the program based on her failing grades for the externship requirement. (*See* Doc. 61-2 at 85). Plaintiff has presented evidence from which a reasonable jury could find that her failure to complete the externship was attributable to her disability and defendant's failure to accommodate it, such that plaintiff was dismissed on the basis of her disability.

Even though plaintiff has presented evidence from which a reasonable jury could find that defendant violated the ADA and Rehabilitation Act in dismissing plaintiff from the program, defendant offers three reasons why summary judgment in its favor is still appropriate. First, defendant argues that the requirements of federal disability law were never triggered in plaintiff's case because she never provided defendant with a "proper diagnosis" of her disability. This argument is not well-taken because a reasonable jury could find that plaintiff's Loveland IEP provided defendant with an adequate diagnosis to trigger federal disability law. (*See* Doc. 76-1 at 21). Indeed, defendant's course of conduct shows that the Loveland IEP and plaintiff's interview with DSO director Kraimer were sufficient for defendant to determine that plaintiff had a disability for which classroom accommodations were appropriate. (*See* Doc. 61 at 27-28; Doc. 1 at ¶ 10; Doc. 34 at ¶ 10). A jury could reasonably find that defendant's argument that a "proper diagnosis" was required before it could grant plaintiff externship accommodations is disingenuous when defendant already had granted plaintiff accommodations for years. Thus, even if plaintiff's previous IEP was insufficient to establish her diagnosis, a reasonable jury could find that defendant should have required a more extensive diagnosis earlier in the process

13

instead of relying on the lack of a "proper" diagnosis as a *post hoc* justification for denying plaintiff externship accommodations.

Further, *Kaltenberger* is distinguishable on this point. In *Kaltenberger*, "plaintiff told an academic counselor at the College that she thought she might have adult attention deficit disorder." 162 F.3d at 437. Unlike *Kaltenberger*, plaintiff's request for accommodations was not supported solely by her own intuition that she might have a learning disability, but by a documented history of such a disability in the form of the Loveland IEP. A reasonable jury could find that this documentation was sufficient to show that plaintiff had been diagnosed with a learning disability such that defendant's duty to engage in the interactive process concerning accommodations was triggered.

Second, defendant argues that summary judgment in its favor is appropriate because plaintiff never requested specific accommodations for the externship requirement. This argument is also not well-taken. At a minimum, plaintiff has presented evidence creating a genuine issue of fact as to whether she made a sufficient request for accommodations before the second externship, such that defendant's duty to engage in the interactive process was triggered. It is undisputed that Browder had a number of meetings with plaintiff and her parents before placing plaintiff at a second externship site. (*See* Doc. 66 at 106-09). Plaintiff has produced evidence that at one of these meetings, her mother asked Browder "to make sure that [plaintiff] was with somebody patient, that would take the time to train [plaintiff] because of her disability." (Doc. 62 at 49). Plaintiff's mother testified that she also told Browder that plaintiff needed repetition and extended time to learn at her second externship site. (*Id.* at 51-52). Further, plaintiff's father testified that "[we] reminded [Browder] about the accommodations, things that [plaintiff] would need, which we felt that she didn't get on the first externship, which

14

resulted in her dismissal from that externship, things that she would need to make the second one successful." (Doc. 64 at 23). Specifically, plaintiff's father testified:

> We talked about the time, needing extra time, as she would be able to repeat these and that she would be able to do one skill, one task, repeat it often enough until she mastered that and then move on to the next so that she wasn't overloaded with a multitude of varying responsibilities all at once to give her time to master a skill, move on to the next. We asked for someone to be patient with her, that understood what [her] disability was, how she would learn and how she could be successful.

(*Id.* at 23-24). Further, plaintiff's father testified that he asked Browder to communicate their requests to someone at the externship site. (*Id.* at 24). A reasonable jury could find that these requests were specific enough to trigger a duty for defendant to engage in the interactive process under federal disability law.

Finally, defendant argues that summary judgment is appropriate because the Court should give "tremendous deference to the professional judgment of faculty" when considering accommodation requests in academic settings. (Doc. 77 at 27). This argument is also not well-taken. It is true that "[c]ourts must also give deference to professional academic judgments when evaluating the reasonable accommodation requirement." *Kaltenberger*, 162 F.3d at 436. However, defendant has not provided evidence that it exercised "professional academic judgment" in relation to plaintiff's requests for externship accommodations. Defendant has not provided any evidence that it considered plaintiff's requested externship accommodations and found that they were infeasible or would result in "fundamental" or "substantial" modifications to the program. *See id.* To the contrary, defendant has argued that plaintiff never requested an externship accommodation for defendant to consider. Thus, because defendant has not presented any evidence that it thoughtfully considered and rejected plaintiff's requests for externship accommodations, "deference to professional academic judgments when evaluating the reasonable accommodation requirement" is not warranted on this record. *See id.*

Based on the foregoing, plaintiff has provided sufficient evidence to raise genuine issues of fact for jury resolution on her claims. Accordingly, summary judgment is denied on plaintiff's ADA and Rehabilitation Act claims against defendant.

C. DAMAGES

Defendant is correct that "punitive damages may not be awarded in private suits brought under . . . [Title II] of the ADA and § 504 of the Rehabilitation Act." *Barnes v. Gorman*, 536 U.S. 181, 189 (2002). Accordingly, defendant's motion for summary judgment is granted as to plaintiff's requests for punitive damages under the Rehabilitation Act and Title II of the ADA. However, defendant's motion for summary judgment is denied as to defendant's argument concerning compensatory damages. The jury will be in a better position to consider whether defendant intended to discriminate against plaintiff based on her disability after considering the evidence presented at trial.

IV. Conclusion

Consistent with the foregoing, defendant's motion for summary judgment (Doc. 77) is **GRANTED IN PART** as to plaintiff's requests for punitive damages under the Rehabilitation Act and Title II of the ADA. However, defendant's motion for summary judgment is **DENIED** in all other respects.

Plaintiff is **ORDERED** to file an amended complaint that includes the correct title and citation of the ADA within **ten (10) days** of the filing of this Order.

**IT IS SO ORDERED.**

Date: 5/3/16

*Karen L. Litkovitz*
Karen L. Litkovitz
United States Magistrate Judge